UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.                                                    CASE NO. 8:25-cr-311-MSS-TGW

SHAWN CHAN

### UNITED STATES' OPPOSITION TO MOTION TO REOPEN THE DETENTION HEARING

The United States files this Motion in Response to the Defendant's Motion to Reopen the Detention Hearing. Doc. 22. The Defendant, Shawn Chan, is a danger to the community, a serious risk of flight, and there are no conditions of release that will reasonably assure Chan's appearance at further proceedings of this case. The United States requests that Chan remain detained pending trial.

### I.   PROCEDURAL HISTORY

On June 6, 2025, Chan was charged by criminal complaint with one count of interstate stalking, in violation of 18 U.S.C. § 2261A(1). Doc. 1. A few weeks later, a grand jury returned an indictment charging Chan with one count of interstate stalking. Doc. 3. On July 8, Chan was ordered detained pending trial. Doc. 15. Now, Chan seeks to reopen the detention hearing on the grounds that he has secured appropriate housing at the Salvation Army. Doc. 22.

### II.   OFFENSE COUNDUCT

The following facts primarily come from the evidence adduced in the Complaint and at the initial detention hearing held in this case. Additional details

that were not proffered at the detention hearing are also provided to supplement the factual record.

On or about May 26, 2025—the *very same day* that Chan obtained a Canadian passport—Chan flew from Ontario, Canada to Orlando, Florida. Doc. 1. At 5. He did so for the sole purpose of stalking G.D., a professional wrestler for the WWE.

When Chan arrived at G.D.'s home, he did not use the driveway. Instead, he snuck onto the property from the south. *Id.* He then proceeded to walk around the property twice. While he walked around the property, he attempted to open a side door of an attached pole barn. *Id.* Chan also walked to G.D.'s front porch where he reached down around the door mat—likely in an attempt to locate a spare key to gain access to G.D.'s home. *Id.* While on the front porch, Chan also obtained a long air rifle pellet gun that G.D. had left on the porch.[1] *Id.* With the pellet gun in hand, Chan attempted to open the front door as pictured below:



*Id.* at 6.

---

[1] The air rifle a Sig Sauer MCX .177 air rifle capable of firing metal pellets at 600 feet per second.

After nearly two hours at G.D.'s home, Chan left. *Id.* at 7. But before doing so, he left a handwritten note on G.D.'s front porch. The note read, in pertinent part, "it's me Shawn the guy you all hang out with on FFII online," "I came here to pay just a friendly visit, nothing more. Yet, I'm the one who looks like a stalker…." *Id.* at 6. The note included Chan's phone number and address in Ontario. A few days later, Chan, again, tried to find G.D. when he visited the WWE Performance Center— where G.D. often makes appearances. He was arrested at the WWE Performance Center.

### III.    LEGAL STANDARD

#### a. Motion to Reopen the Detention Hearing

Title 18, United States Code, Section 3142(f)(2) permits a judicial officer to reopen a detention hearing at any time before trial if the judicial officer finds that information exists that was not known to the movant at the time of the detention hearing and that has a material bearing on the issue of whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community.

#### b. The Bail Reform Act of 1984

The Bail Reform Act of 1984 (the "Act") sets out the circumstances when a defendant may be detained pending trial. The goal of the act is to balance a defendant's fundamental interest in pretrial liberty with adequate protection of the community and the integrity of the judicial process. *United States v. Salerno*, 481 U.S.

739, 747 (1987). To accomplish this goal, the Act limits the circumstances under which detention may be sought. *Id.*

Section 3142(f) of the Act specifies those circumstances. Detention hearings are authorized when the defendant is either charged with one of five categories of serious crimes, or presents a serious risk of flight, or a serious risk of obstruction or intimidation. 18 U.S.C. § 3142(f). At the detention hearing, detention is warranted if, on balance, the following factors demonstrate that there are no conditions of release that would reasonably assure the appearance of the person as required by the Court and the safety of any person in the community:

> (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;
>
> (2) the weight of the evidence against the person;
>
> (3) the history and characteristics of the person; and,
>
> (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

*See* 18 U.S.C. § 3142(g). If the Government establishes that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community," the Defendant must be ordered detained. 18 U.S.C. § 3142(e)(1).

## IV. ANALYSIS

### a. The Court Should Not Reopen the Detention Hearing

As explained above, a judicial officer may reopen a detention hearing at any time before trial if the judicial officer finds that information exists that was not known to the movant at the time of the detention hearing and that has a material bearing on the issue of whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community. 18 U.S.C. § 3142(f)(2).

The fact that counsel has secured a bed for Chan at the Salvation Army does not have a *material* bearing on the issue of whether there are conditions of release that will reasonably assure his future appearance and the safety of other persons and the community. As explained in more detail below, the nature and circumstances of Chan's offense, the weight of the evidence against him, and Chan's history and characteristics justify detention. The newly proffered information does not have a material bearing on the issue of whether there are conditions of release that will reasonably assure Chan's appearance at future court proceedings and the safety of other persons and the community—including G.D.

### b. Chan Should Remain Detained Pending Trial

The Court should order that the Defendant remain held without bond pending the trial of this matter because "no condition or combination of conditions will reasonably assure the appearance of the [Defendant] as required." 18 U.S.C. § 3142(e)(1). The statutory factors enumerated at 18 U.S.C. § 3142(g) strongly support

5

this conclusion.

### 1. Nature and Circumstances of the Offenses

Section 3142(g) instructs this Court to consider "the nature and circumstances of the offense charged." The nature and circumstances of the offense charged weigh heavily in favor of detention. To begin, Chan booked an international flight for the sole purpose of finding G.D. And he succeeded: he found her address, he found a way to travel from Orlando to G.D.'s home, and he visited a WWE performance center in the hopes that G.D. would be there. Doc. 1 at 2-4.

When visiting her home (unannounced and without permission), Chan tried to locate a spare key under the front door mat. He even held a pellet riffle while he attempted to break into G.D.'s home through the front door. *Id*. Because of Chan's conduct, G.D. required a police escort back to her home. *Id*. If released to the Tampa Salvation Army, Chan could easily make another visit to G.D.'s home. The nature and circumstances of the crime charged weighs in favor of detention.

### 2. Weight of the Evidence

The weight of the evidence, 18 U.S.C. § 1342(g), also favors detention. On the very day Chan obtained a Canadian passport, he booked a flight from Canada to Florida to find G.D. *Id*. When he arrived in the United States, he told an interviewing agent that he was staying at the WWE Performance center (where G.D. makes appearance). *Id*. Within days of his arrival, he traveled from Orlando to G.D.'s home where video footage from G.D.'s home security camera captured Chan's disturbing conduct—including holding a pellet gun while he attempted to get

6

into G.D.'s front door. *Id*. In the handwritten note Chan left at G.D.'s home—where he made it known that he had found her home—Chan provided his real name, phone number, and address. *Id*. at 5-6. This factor weighs in favor of detention.

### 3. History and Characteristics

Chan's history and characteristics also demonstrate that he is a very real risk of non-appearance. 18 U.S.C. § 3142(g)(3). To begin, Chan is a Canadian citizen who, as explained above, was only in the Middle District of Florida to intimidate and stalk G.D. *Id.* at 5-6. He has no reported family in the Middle District of Florida. He does not have a job in the Middle District of Florida, nor does he have any authorization to work in the United States. In fact, Chan has no obvious ties to this country at all. Instead, his only contacts appear to be in Canada—where he could easily flee if released. What's more, at the initial detention hearing, Chan reported having no mental health problems. Since then, however, Chan's counsel has indicated that Chan is being evaluated for competency. Doc. 23 at 1. Given Chan's lack of ties to the community and these serious mental health concerns, there is no condition or combination of conditions that can reasonably assure Chan's appearance at trial.

## V. CONCLUSION

For the foregoing reasons, the United States respectfully requests that the Court deny Chan's request to reopen the detention hearing. Chan should remain detained pending trial.

                                                Respectfully submitted,

                                                GREGORY W. KEHOE
                                                United States Attorney

By:   */s/ Lindsey Schmidt*
       Lindsey Schmidt
       Assistant United States Attorney
       United States Attorney Number 222
       400 N. Tampa St., Ste. 3200
       Tampa, FL 33602-4798
       Telephone: (813) 274-6000
       Facsimile: (813) 274-6358
       E-mail: lindsey.schmidt@usdoj.gov

U.S. v. CHAN                                          Case No. 8:25-cr-311-MSS-TGW

## CERTIFICATE OF SERVICE

I hereby certify that on September 2, 2025, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to counsel for the parties of record.

          By:    */s/ Lindsey Schmidt*
                  Lindsey Schmidt
                  Assistant United States Attorney
                  United States Attorney Number 222
                  400 N. Tampa St., Ste. 3200
                  Tampa, FL 33602-4798
                  Telephone: (813) 274-6000
                  Facsimile: (813) 274-6358
                  E-mail: lindsey.schmidt@usdoj.gov