## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

**UNITED STATES OF AMERICA**

**v.**                                    **Case No. 8:25-cr-311-MSS-TGW**

**SHAWN CHAN**

_____/

### MOTION TO REVOKE DETENTION ORDER

**NOW COMES** Defendant, Shawn Chan, by and through undersigned counsel, and moves this Court to revoke the magistrate judge's detention order.

### MEMORANDUM OF LAW

### BACKGROUND

Mr. Chan is a Canadian citizen present in the United States lawfully pursuant to a valid visa. He has no criminal history. He does not drink or use drugs. He suffers from delusional disorder. He traveled to the United States to attempt to make contact with a professional wrestler with whom he believed he had a friendly relationship, attempting to call on her at her home and then leaving a letter with his name and address instead. He is charged with interstate stalking under 18 U.S.C. § 2261A(1).

Upon Mr. Chan's arrest, the Government moved to detain him under 18 U.S.C. § 3142(f)(2)(A), arguing that Mr. Chan presents a serious risk of flight. Mr. Chan, at the time, had nowhere to live, and the magistrate judge detained him.

Then, defense counsel secured housing for Mr. Chan at the Salvation Army's Adult Rehabilitation Center in Tampa. Mr. Chan moved to reopen the detention hearing, and the magistrate judge granted the motion. At the reopened hearing, the Government again argued that Mr. Chan is a risk of flight, and that no combination of conditions will reasonably assure his appearance. The Defense argued that Mr. Chan should be released with a location-monitoring condition and a condition that he stay away from the alleged victim. The magistrate judge ordered Mr. Chan's continued detention, on the basis that Mr. Chan is a danger to the alleged victim.

## ARGUMENT

The Government failed to show that Mr. Chan is a serious risk of flight or that no combination of conditions of release could "reasonably assure" his appearance as required, and the magistrate judge erred in considering the danger to the safety of the victim posed by his release. The Bail Reform Act permits the court to hold a detention hearing on either of two grounds. 18 U.S.C. § 3142(f). One ground – the ground on which the Government relied in this case – is that the "case involves" "a serious risk that [the defendant] will flee[.]" *Id*. § 3142(f)(2)(A). The Government must prove a serious risk that the defendant will flee by a preponderance of the evidence. *United States v. King*, 849 F.2d 485, 489 (11th 1988). If the Government makes this showing, it must then show that "no condition or combination of conditions will reasonably assure the appearance of the person as required . . . ." 18

2

U.S.C. § 3142(e).  The Government must likewise make this second showing by a preponderance of the evidence.  *United States v. Quartermaine*, 913 F.2d 910, 917 (11th Cir. 1990).

If a magistrate judge orders the defendant's detention, the defendant may file a motion to revoke it with the district judge.  *See* 18 U.S.C. § 3145(b).  The district court reviews the motion to revoke de novo, without deference to the magistrate judge.  *See United States v. Gaviria*, 828 F.2d 667, 670 (11th Cir. 1987).  The district court may take and consider new evidence not before the magistrate judge.  *King*, 849 F.2d at 490-91.  The motion must be determined "promptly."  18 U.S.C. § 3145(b).

## I.  The Government has not shown a serious risk that Mr. Chan will flee.

Mr. Chan is present on a valid visa.  He has no criminal history.  He is unable to work to earn an income and has no resources.  He cannot flee to Canada or anywhere else.  His home is in Canada so he has no incentive to flee to avoid deportation, should the Government pursue his deportation when his visa expires.

The Government hardly contested these facts or argued that Mr. Chan is a serious risk to flee.  Instead, the Government skipped to the Bail Reform Act's second step, involving whether any combination of conditions will reasonably assure his appearance.  *See* Doc. 25 at 5-7.  But the Government must first show that Mr.

3

Chan is a "serious" risk to flee before the Court may consider whether to detain him. The Government has failed to do so, so the Court should revoke the detention order.

## II. Even assuming the Government met its initial threshold showing of a serious risk that Mr. Chan will flee, it failed to show that no combination of conditions of release would "reasonably assure the appearance" of Mr. Chan.

If the Government first shows "a serious risk that [the defendant] will flee" under § 3142(f)(2), it must next show "that no condition or combination of conditions will reasonably assure the appearance of the person as required" under § 3142(e). The Government has the burden of proving this fact by a preponderance of the evidence. *Quartermaine*, 913 F.2d at 917. The court is required to consider several factors, including "(1) the nature and circumstances of the offense charged," "(2) the weight of the evidence against the person;" "(3) the history and characteristics of the person," and the nature and seriousness of any danger posed by the defendant's release. 18 U.S.C. § 3142(g). The Government must show that conditions of release will not "reasonably" assure the defendant's appearance, and it is error to require iron-clad guarantees of appearance. *United States v. Orta*, 760 F.2d 887, 891-92 (8th Cir. 1985).

None of these factors serves to meet the Government's burden. Under the "nature of the offense" factor, the Court is to consider "whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive

4

device." Mr. Chan's alleged crime is none of these offenses. What's more, nothing about the nature of the offense even begins to suggest that Mr. Chan will flee to avoid the Court's jurisdiction.

Next, the weight of the evidence against Mr. Chan is weak. Mr. Chan suffers from a delusional disorder. He sincerely – if mistakenly and bizarrely – believes he has a friendly enough relationship with the alleged victim that he can call on her unannounced. To prove its case, the Government must show that Mr. Chan intended to "harass" or "intimidate" the alleged victim. 18 U.S.C. § 2261A. The fact of Mr. Chan's sincere delusions severely undercuts any argument by the Government that his intent was to harass or intimidate the alleged victim. The weight of the evidence does not give Mr. Chan any reason to flee; rather, it gives him the incentive to appear for trial and seek his acquittal.

In considering the defendant's history and characteristics, the court is to consider "the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings," and "whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law . . . ." 18 U.S.C. § 3142(g)(3). Mr. Chan has no financial

5

resources or income with which to flee.  He does not use drugs or alcohol.  He has no criminal history.  He has no record of failing to appear and is not on probation, parole, or release pending trial.  His history and circumstances show that is the sort of person who would dutifully appear as required in court.

To be sure, Mr. Chan has a rather severe mental illness.  But it is an illness that is treatable, and the Court is empowered to require Mr. Chan to undergo treatment during his release.  The Government has not shown that this condition of release would fail to "reasonably assure" Mr. Chan's appearance as required.

Lastly, whatever danger Mr. Chan poses to the safety anyone, that danger does not bear on his risk of *nonappearance*.  Where the Government's detention motion is brought under § 3142(f)(2), the Government must show that Mr. Chan will deliberately flee.  *See United States v. Santos-Flores*, 794 F.3d 1088, 1091 (9th Cir. 2015) (citing *United States v. Tujilo-Alvarez*, 900 F. Supp. 2d 1167, 1176-78 (D. Or. 2012)) (holding "that the district court erred in relying on the existence of an ICE detainer and the probability of [the defendant's] immigration detention and removal from the United States to find that no condition or combination of conditions will reasonably assure [the defendant's] appearance pursuant to 18 U.S.C. § 3142(e)); *see also United States v. Storme*, 83 F.4th 1078, 1083 (7th Cir. 2023) (holding that "nonappearance [in § 3142(e)] refers to an attempt to avoid submitting to the court's jurisdiction," not some other reason for a defendant's absence).  Any danger posed by Mr. Chan does

6

not suggest that he will deliberately flee.  In any event, if the Court releases Mr. Chan it may do so on conditions that assure the safety of others.  The Court may pair a location-monitoring condition with a stay-away order for the alleged victim, to ensure her safety.  The Government has failed to show that no combination of conditions will reasonably assure Mr. Chan's appearance as required.

## III.  The magistrate judge erred by detaining Mr. Chan as a danger.

Under the Bail Reform Act, the Court may detain a defendant as a danger to the safety of others only in the circumstances listed in § 3142(f)(1).  The Bail Reform Act permits detention only "after a hearing pursuant to the provisions of subsection (f) . . . ."  18 U.S.C. § 3142(e)(1).  Subsection (f), in turn, permits the court to hold a hearing in two sets of circumstances.  Under subsection (f)(1), the Court may hold a detention hearing "upon motion of the attorney for the Government" if the case involves a list of five enumerated types of offenses.  *Id*. § 3142(f)(1).  A court may hold a hearing under this provision "in a case that involves" "a crime of violence"; a violation of section 1591; a terrorism offense carrying a maximum sentence of 10 years' imprisonment; an offense for which the maximum sentence is life imprisonment or death; a drug offense carrying a maximum sentence of ten years' imprisonment or more; a felony where the defendant has certain prior convictions; a felony that involves a minor victim; a felony that involves the possession or use of a firearm, destructive device, or other dangerous weapon; or the failure to register of a

sex offender. *Id*. § 3142(f)(1)(A)-(E). Under subsection (f)(2), the court may hold a detention hearing if the case involves "a serious risk that [the defendant] will flee" or "a serious risk that [the] defendant will obstruct or attempt to obstruct justice, or threaten, injure, or intimidate, or attempt to threaten, injure, or intimidate, a prospective witness or juror." *Id*. § 3142(f)(2). But the magistrate judge did not rely on a risk of flight or obstruction in this case, only a purported danger to the safety of others.

The Supreme Court has interpreted these provisions to limit the circumstances under which the court may detain the defendant as a danger to safety. *See United States v. Salerno*, 481 U.S. 739, 747 (1987). In *Salerno*, considering a challenge to the constitutionality of the Bail Reform Act's preventative detention scheme, the Court wrote, "The Bail Reform Act carefully limits the circumstances under which detention may be sought to the most serious of crimes. *See* 18 U.S.C. § 3142(f) (detention hearings available if case involves crimes of violence, offenses for which the sentence is life imprisonment or death, serious drug offenses, or certain repeat offenders)." *Id*.

Given the statute's text and structure, and *Salerno*'s limiting interpretation of it, every court of appeals and the majority of district courts to have considered the issue has held that a court may not hold a detention hearing solely on the basis of a defendant's danger to safety unless the case involves one of the offenses enumerated

8

in subsection (f)(1).  *See United States v. Himler*, 797 F.2d 156, 160 (3d Cir. 1986);

*United States v. Ploof*, 851 F.2d 7, 11 (1st Cir. 1988); *United States v. Twine*, 344 F.3d

987, 987 (9th Cir. 2003); *United States v. Singleton*, 182 F.3d 7, 99 (D.C. Cir. 1999);

*United States v. Byrd*, 969 F.2d 106, 109-10 (5th Cir. 1992); *United States v. Friedman*,

837 F.2d 48, 49 (2d Cir. 1988); *United States v. Holmes* 438 F. Supp. 2d 1340, 1344

(S.D. Fla. 2005); *United States v. Giordano*, 370 F. Supp. 2d 1256, 1260 (S.D. Fla.

2005); *United States v. DeBeir*, 16 F. Supp. 2d 592, 593 (D. Md. 1998); *United States v.

Allen*, 409 F. Supp. 2d 622, 625 (D. Md. 2006).  Relatedly, even if the Government

successfully triggers a detention hearing by showing a serious risk of flight or

obstruction, the Court is limited to considering flight or obstruction in ordering

detention, and may not consider danger to safety.  *See Himler*, 797 F.2d at 160;

*Giordano*, 370 F. Supp. 2d at 1261-64; *Debeir*, 16 F. Supp. 2d at 595; *United States v.

LaLonde*, 246 F. Supp. 2d 873, 875 (S.D. Ohio 2003); *United States v. Chavez-Rivas*,

536 F. Supp. 2d 962, 967-68 (E.D. Wis. 2008); *United States v. Dodge*, 842 F. Supp.

643, 645 (D. Conn. 1994); *see also* Lauryn P. Gouldin, *Disentangling Flight Risk from

Dangerousness*, 2016 B.Y.U. L. Rev. 837, 873-79 (2016).

    The holdings of cases like *Himler*, *Ploof*, *Byrd*, *Friedman*, and *Singleton* have

only been strengthened since the cases were decided by the Bail Reform Act's

amendment history.  *See Giordano*, 370 F. Supp. 2d at 1261 n.3.  In *Byrd*, a child

pornography case, the court wrote, "What may be surprising is the conclusion that even after a hearing, detention can be ordered only in certain designated and limited circumstances, irrespective of whether the defendant's release may jeopardize public safety." *Byrd*, 969 F.2d at 109-10.  The court continued, "There is no doubt that the Act places a risk on society:  a defendant who clearly may pose a danger to society cannot be detained on that basis alone.  In such instances, the Act requires that society's interest be safeguarded only by a set of conditions imposed on his release." *Id.* at 110.

Congress responded to narrow the risk the Act places on society by adding to the list of qualifying offenses in subsection (f)(1).  In the Adam Walsh Child Protection and Safety Act of 2006, Pub. L. 109-248, § 216, 120 Stat. 587, Congress added to subsection (f)(1) what now appears as subparagraph (E), permitting a detention hearing in cases involving minor victims, dangerous weapons, or the failure to register of a sex offender.  What Congress did *not* do, however, is upset the general holdings of cases from *Himler* to *Singleton* that detention to prevent danger to safety is only authorized in cases enumerated in subsection (f)(1); Congress only modified the list of eligible cases.  This demonstrates that Congress, which is presumed to know the relevant caselaw, chose not to change the prevailing interpretation.  *Giordano*, 370 F. Supp. 2d at 1261 n.3 (citing *Conroy v. Aniskoff*, 507 U.S. 511, 516 & n.10 (1993); *Chisom v. Roemer*, 501 U.S. 380, 396 (1991)).

10

It is at best questionable under *Salerno* whether Congress *could* constitutionally extend preventative detention for dangerousness to all cases – yet another reason bolstering the prevailing interpretation of the Bail Reform Act.  In *Salerno*, one reason cited by the Court for upholding the constitutionality of the Bail Reform Act against a Due Process challenge was the limited class of cases in which preventative detention is authorized.  *See Salerno*, 481 U.S. at 747.  If this Court were to interpret the Act inconsistent with this understanding in *Salerno*, a grave constitutional question as to whether Congress may constitutionally provide for preventative detention in all cases would arise.  That the question would even be presented is a reason to interpret the Bail Reform Act consistently with *Salerno*.  *See Jennings v. Rodriguez*, 583 U.S. 281, 296 (2018) (citations omitted) (describing the canon of constitutional avoidance).

One outlier opinion from this District would permit consideration of the defendant's danger to safety in all cases, but its reasoning gives short shrift to the plain language of the statute, *Salerno*, and various tools of statutory construction.  *See United States v. Megahed*, 519 F. Supp. 2d 1236, 1246-50 (M.D. Fla. 2007).  In *Megahed*, the defendant was charged with transporting explosives without a license – not one of the crimes listed under § 3142(f)(1).  *See id.* at 1240.  The defendant argued that he could not be detained on dangerousness grounds, since he was not charged

11

with a subsection (f)(1) offense. *Id.* at 1245. The court brushed aside *Salerno*'s interpretation of the Bail Reform Act as errant dicta. *Id*. at 1245-46 & n.5. Addressing *Ploof* and similar cases, the court then reasoned that the Act's expressly providing for a detention hearing in limited circumstances does not impliedly forbid a hearing when those circumstances are not present. *Id*. at 1248. The court asked, "[D]oes the *Salerno*, *Ploof*, and *DeBeir* interpretation mean that the government cannot seek to detain anyone else in any other instance at all, e.g., a counterfeiter whose liberty may debauch the currency or prompt dangerous conflict with a co-conspirator or even a competitor?" *Id*. at 1248. The court then grafted additional words onto the language of § 3142(e), so that instead of simply reading "after a hearing pursuant to Section 3142(f)" it would read "after a hearing *held in accord with the procedural requirements prescribed in* Section 3142(f)," taking into account "the sense of the statute . . . ." *Id*. at 1246, 1249 (emphasis added). On this basis, the court concluded that a defendant may be detained for dangerousness upon a sufficient showing in all cases, though that interpretation was unnecessary to the decision, since the court detained the defendant as a risk of flight. *Id*. at 1249-50.

Aside from its being against the overwhelming weight of authority, this Court should decline to follow *Megahed* for several reasons. First, § 3142(e)'s plain language states that detention may only occur "after a hearing pursuant to Section

12

3142(f)." As the Fifth Circuit explained, this plain language leads straightforwardly

to a limiting interpretation:

> A hearing can be held only if one of the six circumstances
> listed in (f)(1) and (2) is present; detention can be ordered
> only after a hearing is held pursuant to § 3142(f). Detention
> can be ordered, therefore, only "in a case that involves" one
> of the six circumstances listed in (f), and in which the
> judicial officer finds, after a hearing, that no condition or
> combination of conditions will reasonably assure the
> appearance of the person as required and the safety of any
> other person and the community.

*Byrd*, 969 F.2d at 109. Where a statute's language is unambiguous, courts cannot re-

write the statute to match its "sense." *See Badaracco v. Commissioner*, 464 U.S. 386,

398 (1984) ("Courts are not authorized to rewrite a statute because they might deem

its effects susceptible to improvement.").

Second, if *Salerno*'s interpretation of the Bail Reform Act was dicta, it should

not be given so little weight. "[T]here is dicta and then there is dicta, and then there

is Supreme Court dicta," and the Eleventh Circuit has "previously recognized that

'dicta from the Supreme Court is not something to be lightly cast aside.'" *See Schwab*

*v. Crosby*, 451 F.3d 1308, 1325-26 (11th Cir. 2006) (quoting *Peterson v. BMI*

*Refractories*, 124 F.3d 1386, 1392 n.4 (11th Cir. 1997)).

Third, it is not "anomalous" that Congress would impliedly disallow a

detention hearing whenever the Government requests one by expressly providing for

a hearing in enumerated circumstances. *See Megahed*, 519 F. Supp. 2d at 1248. To

13

the contrary, it is quite expected, and is the traditional way of understanding Congress's express enumeration of circumstances. *See Christian Coalition of Florida v. United States*, 662 F.3d 1182, 1193 (11th Cir. 2011) (citation omitted) ("The principle of *expressio unius* simply says that when a legislature has enumerated a list or series of related items, the legislature intended to exclude similar items not specifically included in the list.").

Fourth, *Megahed* does not address Congress's presumed understanding of the unbroken line of cases limiting the circumstances under which a defendant may be detained for dangerousness, or Congress's decision in the Adam Walsh Act to only add to the enumerated circumstances rather than upset the caselaw's limiting interpretation. *See Giordano*, 370 F. Supp. 2d at 1261 n.3 (citations omitted). Fifth, rejecting *Salerno*'s interpretation raises a serious constitutional question that the statute should be read to avoid.

Lastly, *Megahed*'s policy concern that judges will be unable to detain some dangerous defendants (and the corresponding counterfeiter hypothetical) is overcome by our system's presumption of innocence, and is dealt with by the non-detention options available under the Bail Reform Act. "In our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *Salerno*, 481 U.S. at 755. "There is no doubt that the Act places a risk on society: a defendant who clearly may pose a danger to society cannot be detained on that basis

14

alone. In such instances, the Act requires that society's interest be safeguarded only by a set of conditions imposed on his release." *Byrd*, 969 F.3d at 110. *Megahed*'s hypothetical counterfeiter could be subject to a host of conditions, and the Bail Reform Act equips the court with a number of remedies should he violate any. *See id.* (citing 18 U.S.C. § 3148).

But by accepting liberty as the norm and pretrial detention as the carefully limited exception, the Act permits some risk to society – as all liberty does. Accordingly, this Court should adopt the prevailing view: a court may order a defendant's detention on the basis of his danger to safety only in the circumstances enumerated in § 3142(f)(1). Because none of those circumstances are present here, the magistrate judge erred by detaining Mr. Chan on the basis of his dangerousness.

DATED this 17th day of September 2025.

Respectfully submitted,

A. FITZGERALD HALL, ESQ.
FEDERAL DEFENDER

*/s Samuel E. Landes*
Samuel E. Landes, Esq.
D.C. Bar No. 1552625
Assistant Federal Defender
400 North Tampa Street, Suite 2700
Tampa, Florida 33602
Telephone: (813) 228-2715
Email: Samuel_Landes@fd.org

15

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 17th of September 2025, a true and correct copy of the foregoing was filed with the Clerk of the Court using the CM/ECF system, which will send a notice of the electronic filing to AUSA Lindsey Schmidt.

*/s Samuel E. Landes*
Samuel E. Landes, Esq.
Assistant Federal Defender

16