IN THE UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF FLORIDA

TAMPA DIVISION

UNITED STATES OF AMERICA,　　　　　)
　　　　　　　　　　　　　　　　　　)
　　　　　Plaintiff,　　　　　　　　) Criminal Docket
　　　　　　　　　　　　　　　　　　)
　　　vs　　　　　　　　　　　　　　) No. 8:25-cr-311-MSS-TGW-1
　　　　　　　　　　　　　　　　　　)
SHAWN CHAN,　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　)
　　　　　Defendant.　　　　　　　　)
_____)

Transcript of Motion Hearing
Heard in Courtroom 12A
Sam M. Gibbons United States Courthouse
801 North Florida Avenue
Tampa, Florida 33602
September 15, 2025 - Monday
2:45 p.m. - 2:57 p.m.

BEFORE THE HONORABLE THOMAS G. WILSON

UNITED STATES MAGISTRATE JUDGE

LORI ANN CECIL VOLLMER, CSR, RPR
Federal Official Court Reporter
Sam M. Gibbons United States Courthouse
801 North Florida Avenue, Room 1221
Tampa, Florida 33602
Lori_CecilVollmer@flmd.uscourts.gov
(813) 301-5336

Proceedings transcribed via courtroom digital audio recording
by a court reporter using computer-assisted transcription.

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

APPEARANCES

PRESENT ON BEHALF OF THE PLAINTIFF,
THE UNITED STATES OF AMERICA:

MS. LINDSEY SCHMIDT,
UNITED STATES ATTORNEY'S OFFICE
400 North Tampa Street
Suite 3200
Tampa, Florida 33602-4798
(813) 274-6000
lindsey.schmidt@usdoj.gov

PRESENT ON BEHALF OF THE DEFENDANT,
SHAWN CHAN:

MR. SAMUEL LANDES,
FEDERAL PUBLIC DEFENDER'S OFFICE
400 North Tampa Street
Suite 2700
Tampa, Florida 33602-4726
(813) 228-2715
Samuel_Landes@fd.org

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

PROCEEDINGS

(Open court.)

(Defendant present.)

(Court called to order.)

COURT SECURITY OFFICER:  Court is now in session.

The Honorable Thomas E. Wilson is presiding.

You may be seated.

THE COURT:  This is a proceeding in case number *8:25-cr-311-MSS-TGW*, *United States versus Shawn Chan*.

The defendant has -- we previously had a detention hearing and the defendant was ordered detained.  He has asked that it be reopened because now he has a place to stay whereas he didn't before.

You may proceed.

MR. LANDES:  Thank you, your Honor.

Sam Landes for Shawn Chan who is with me here at counsel table.

Your Honor, as the Court correctly recounted, there was previously a hearing at which the defense conceded that there was simply nowhere for Mr. Chan to live.

Since that time, we've secured housing for Mr. Chan at the Salvation Army's Adult Rehabilitation Center in Tampa, Florida.  So he can live there.  He's under some pretty strict restrictions.  One example is

that he can't use a cell phone for 30 days.  He can't have a cell phone for 30 days.

The Court, of course, can order electronic monitoring and probably should in this case and order Mr. Chan to stay-away from the alleged victim.  With the combination of that stay away order and electronic monitoring, we will know where Mr. Chan is and he will have his -- a great disincentive to stay away from the victim and to not flee.

I think importantly, your Honor, this is not a case about dangerousness.  Much of the government's argument has focused on factors like that pointing to especially the nature of the offense.

But this is a case brought to show that there is a risk of flight and the government has moved under (f)(2) trying to show --

THE COURT:  What?

What did you say?

MR. LANDES:  (f)(2), your Honor.  This is -- this is a case in which the government has moved by showing that there's a serious risk of flight or is attempting to show a serious risk of flight.

And for that reason, I think a lot of what the government has to say is beside the point because it has -- goes to perhaps dangerousness, but not the likelihood that

he would flee.

So the nature of the offense, however startling it may be, that he should show up at this person's house does not lend itself to -- as evidence that he's going to flee from the proceedings in this case.

Moving down the list, the -- the weight of the evidence is weak. One fact I'd like to proffer to the Court is that since the last time we were together, we've had Mr. Chan psychologically evaluated and he has delusional disorder. So he has a sincere misguided or bizarre belief that he has a serious friendship with this person who he tried to visit.

One of the elements that the government has to prove is that Mr. Chan intended to harass or intimidate the alleged victim, not that he was simply trying to visit someone with whom he thought he had a friendly relationship. So that undercuts the government's evidence that it would have to prove because they can't prove that element. In fact, he had this sincere, although bizarre mistaken belief, that he was just present --

THE COURT: That makes it better?

MR. LANDES: It does. It does under the weight of the evidence prong, your Honor.

So he --

THE COURT: I don't understand. If he's got

some obsession with this woman, why would I trust him to stay away from her?

MR. LANDES: Because there's conditions of release that will ensure that, your Honor.

THE COURT: No, no. Yeah. It's sitting in jail. I -- I'm not going to risk some woman's safety on somebody who has -- apparently, you had him evaluated, is that it?

MR. LANDES: Yes, your Honor. Yes, your Honor.

THE COURT: And so he has an obsession with her.

MR. LANDES: Well, I wouldn't say that, your Honor. He has a delusion.

THE COURT: I thought that's what you said.

MR. LANDES: He has a delusion that he has a friendly relationship with her. I wouldn't say he has an obsession with her.

THE COURT: Okay.

MR. LANDES: So he thinks he's visiting a friend when he shows up at the front door, leaves a note with his name and his address and how we can find him. That's not consistent with having an intent to harass or intent to intimidate.

And so that -- because of that, the strength of the evidence is weak. He has a strong incentive to go to trial, to come back to court, not flee, and go to trial and

seek his acquittal because the government's evidence is weak.

Your Honor, I -- I again want to reemphasize that this motion for detention was brought under (f)(2). So that's a serious risk of flight. So while it was --

THE COURT: I gave you a break by getting -- agreeing to do it. The government is correct. There wasn't anything new that was really presented and you're really not entitled to this reopening.

The fact that he can now stay at the Salvation Army doesn't persuade me at all that there's anything really substantially new, but I had the hearing and I scheduled it as an accommodation.

MR. LANDES: Understood, your Honor.

And -- and what we would say to that is that that's some very important new information because at the prior hearing, he had absolutely nowhere to live. Now, he has somewhere he can go. So that's -- that's a material change and it's an important change.

We didn't even ask for his release before that because we just had nowhere for him to be. We -- we do now because he has somewhere he can be and there are conditions of release that will ensure that he does not flee and that he'll appear as required.

So I don't think it's -- it's about safety, your

Honor. It's not about dangerousness or safety. I think it's all --

THE COURT: No, it is. In my mind, that's what it's about.

MR. LANDES: Under- -- understood, your Honor.

And -- and we object to that, to the Court considering it in that way.

THE COURT: Okay. All right.

MR. LANDES: Thank you, your Honor.

THE COURT: What says the government?

MS. SCHMIDT: Your Honor, it's the United States' position that Mr. Chan should remain detained.

One important point is moving under 3142(f)(2) does not preclude the Court from considering dangerousness. It just triggers the hearing, which we had, and now we've reopened against the government's objection.

So dangerousness is an appropriate factor under 3142(g), starting there.

And before I proceed with argument, I just offer Government's Exhibit 1 into evidence, which the Court has in front of -- the Court has as well as defense counsel.

THE COURT: Well, that -- that was already -- I've already seen that picture.

MS. SCHMIDT: Understood, your Honor.

I know it's in the complaint. I just wanted to

reiterate that again here today.

THE COURT: It wasn't in color, but it was --

MS. SCHMIDT: Understood, your Honor.

THE COURT: Go ahead.

MS. SCHMIDT: Turning to the nature and circumstances of the offense, I won't be labor this point. This is a serious offense.

Mr. Chan traveled from Canada to Florida for the sole purpose of finding this person, the victim in this case. He did so. He traveled to her home. Once he got to her home, he snuck around the property. He snuck onto the property. He jiggled door handles.

Government's Exhibit No. 1 is not a -- not a friendly visit. He's holding pellet gun while he tries to gain access into the victim's front door. He stayed for hours.

He left a note that I would argue is intimidating making sure that the victim knew that he was there, knew that he -- he knew where to find her and knew where she would be.

He then traveled to her place of work, a performance center in Orlando, which was the very place that when he came into the United States, he said he was staying. When he was at the center, he knew that there was a potential for the victim to be there and did he so for the sole purpose of

intimidating the victim.

And contrary to defense counsel's argument, the weight of the evidence is very strong here. First of all, he's recorded on video camera. He signs a note with his name on it and his address and his phone number. And the prong is would this cause a reasonable person to be distressed? And the answer to that is yes, it would.

Having someone show up to your home, finding your address, walking around with a pellet gun is certainly concerning and it was to this victim. It was so concerning that when Mr. Chan's whereabouts were unknown, she had to be escorted home by police.

And, your Honor, Mr. Chan's history and characteristics also weigh in favor of detention. As your Honor knows, he's a Canadian citizen with no status here in the United States. He entered on a B1 Visa that will expire in November at which point he would be subject to deportation proceedings.

He also, under that Visa, even while it is operable, cannot work in the United States and gain and earn wages.

And he also has no ties whatsoever to the Middle District of Florida. He has no family, no friends , no support system here. And those all weigh in favor of detention.

And then when defense counsel brought up as the delusional disorder, that certainly weighs in favor of detention. One, for purposes of dangerousness, but also for risk of flight under 3142(g).

A person's mental health can certainly be considered. It appears he has a delusional disorder that makes him think that he has some relationship with the victim that he does not.

Your Honor, securing a bed at the Salvation Army does not warrant even opening this detention hearing. It certainly doesn't alleviate the factors that Mr. Chan --

THE COURT: Well, we're already here at the hearing.

MS. SCHMIDT: Sure. Understood, your Honor.

It certainly doesn't alleviate the fact that he is not only a risk of flight, but also that he is a danger to the community, specifically to the victim in this case who, as your Honor knows, lives in and around the Tampa area.

It's my understanding that the Salvation Army is a voluntary program. He can come and go as he pleases with no repercussions for going, visiting the victim and not coming back.

Also, as the United States pointed out, he has no ability to earn wages here in the United States while

he's on release.  I think that would complicate a few things for purposes of reporting to pretrial services, traveling to and from potential visits as well as even obtaining a cell phone for check-ins.

And so for all of those reasons, as well as those stated at the original detention hearing, your Honor, the United States believes that Mr. Chan should remain detained pending trial.

THE COURT:  Mr. Landes?

MR. LANDES:  Yes, your Honor.

Your Honor, I do think it would be an error to base this decision on dangerousness.  There -- the --

THE COURT:  Well, I'm going to.

MR. LANDES:  Understood.

THE COURT:  Because I'm doing it from the -- the perspective of the victim.  She's got to be terrified and to have him free and loose out there has got to be really scary for her.  So I'm considering that factor.

MR. LANDES:  Understood, your Honor.

THE COURT:  And the -- and you've added that he has some delusion about her.  That wasn't on the table before.  But under the circumstances, he will be detained.

All right.  Anything further I need to address?

MS. SCHMIDT:  Nothing the United States, your Honor.

MR. LANDES:  No.  Thank you, your Honor.

THE COURT:  All right.  Court will be -- court will be in recess.

COURT SECURITY OFFICER:  All rise.

(Whereupon, the Court adjourned at 2:57.)

--ooOoo--

UNITED STATES DISTRICT COURT    )

                                )

MIDDLE DISTRICT OF FLORIDA      )

REPORTER TRANSCRIPT CERTIFICATE

I, LORI ANN CECIL VOLLMER, Official Court Reporter for the United States District Court, Middle District of Florida, certify pursuant to Section 753, Title 28, United States Code, that the foregoing transcript is a true and correct transcription of the stenographic notes taken by the undersigned in the above-entitled matter, Pages 1 through 13, and that the transcript page format is in conformance with the regulations of the Judicial Conference of the United States of America.  I further certify that I am not attorney for, nor employed by, nor related to any of the parties or attorneys to this action, nor financially interested in this action.

IN WITNESS WHEREOF, I have set my hand at Tampa, Florida, this 19th day of September 2025.

/s/ Lori Ann Cecil Vollmer

Lori Ann Cecil Vollmer, CSR, RPR
United States Court Reporter

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION