UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

    v.                                            CASE NO. 8:25-cr-311-MSS-TGW

SHAWN CHAN

## UNITED STATES' OPPOSITION TO MOTION TO REVOKE THE MAGISTRATE JUDGE'S DETENTION ORDER

The United States files this Motion in Response to the Defendant's Motion to Revoke the Detention Order. Doc. 33. The Defendant, Shawn Chan, is a serious risk of flight and there are no conditions of release that will reasonably assure Chan's appearance at further proceedings of this case or the safety of the community. The United States requests that Chan remain detained pending trial.

### I. PROCEDURAL HISTORY

On June 6, 2025, Chan was charged by criminal complaint with one count of interstate stalking, in violation of 18 U.S.C. § 2261A(1). Doc. 1. A few weeks later, a grand jury returned an indictment charging Chan with one count of interstate stalking. Doc. 3. On July 8, Chan was ordered detained pending trial because he was a serious risk of flight and a danger to the community. Doc. 15.

On September 15, 2025, the Magistrate Judge held a hearing on Chan's motion to reopen detention and release Chan from custody. At the hearing, Chan argued that his placement at the Salvation Army—a voluntary adult rehabilitation program—warranted his release. Following the hearing, Chan was ordered to remain

detained pending trial. Doc. 32.

## II.     OFFENSE COUNDUCT

The following facts primarily come from the evidence adduced in the Complaint and at two detention hearings held in this case. Additional details that were not proffered at the detention hearing are also provided to supplement the factual record. *See* Attachment A, Transcript from First Detention Hearing (hereinafter, "First Tr."), Attachment B, Transcript from Second Detention Hearing (hereinafter, "Second Tr.")

On or about May 26, 2025—the *very same day* that Chan obtained a Canadian passport—Chan flew from Ontario, Canada to Orlando, Florida. Doc. 1. At 5. He did so for the sole purpose of stalking G.D., a professional wrestler for the WWE.

When Chan arrived at G.D.'s home, he did not use the driveway. Instead, he snuck onto the property from the south. *Id*. He then proceeded to walk around the property twice. While he walked around the property, he attempted to open a side door of an attached pole barn. *Id*. Chan also walked to G.D.'s front porch where he reached down around the door mat—likely in an attempt to locate a spare key to gain access to G.D.'s home. *Id*. While on the front porch, Chan also obtained a long air rifle pellet gun that G.D. had left on the porch.[1] *Id*. With the pellet gun in hand, Chan attempted to open the front door as pictured below:

---

[1] The air rifle a Sig Sauer MCX .177 air rifle capable of firing metal pellets at 600 feet per second.



*Id.* at 6.

After nearly two hours at G.D.'s home, Chan left. *Id.* at 7. But before doing so, he left a handwritten note on G.D.'s front porch. The note read, in pertinent part, "it's me Shawn the guy you all hang out with on FFII online," "I came here to pay just a friendly visit, nothing more. Yet, I'm the one who looks like a stalker…." *Id.* at 6. The note included Chan's phone number and address in Ontario. A few days later, Chan, again, tried to find G.D. when he visited the WWE Performance Center—where G.D. often makes appearances. He was arrested at the WWE Performance Center.

### III. LEGAL STANDARD

#### a. Motion to Revoke Detention Order

Title 18 United States Code, Section 3145(b) provides that, "[i]f a person is ordered detained by a magistrate judge," "the person may file, with the court having

3

original jurisdiction over the offense, a motion for revocation or amendment of the order, a motion for revocation of the order." The District Court judges review the United States' detention request de novo. *United States v. Hurtado*, 779 F.2d 1467, 1471-1472 (11th Cir. 1985).

### b. The Bail Reform Act of 1984

The Bail Reform Act of 1984 (the "Act") sets out the circumstances when a defendant may be detained pending trial. The goal of the act is to balance a defendant's fundamental interest in pretrial liberty with adequate protection of the community and the integrity of the judicial process. *United States v. Salerno*, 481 U.S. 739, 747 (1987). To accomplish this goal, the Act limits the circumstances under which detention may be sought. *Id*.

Section 3142(f) of the Act specifies those circumstances. Detention hearings are authorized when the defendant is either charged with one of five categories of serious crimes, or presents a serious risk of flight, or a serious risk of obstruction or intimidation. 18 U.S.C. § 3142(f). At the detention hearing, detention is warranted if, on balance, the following factors demonstrate that there are no conditions of release that would reasonably assure the appearance of the person as required by the Court and the safety of any person in the community:

> (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;
>
> (2) the weight of the evidence against the person;

>  (3) the history and characteristics of the person; and,
>
>  (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

*See* 18 U.S.C. § 3142(g). If the Government establishes that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community," the Defendant must be ordered detained. 18 U.S.C. § 3142(e)(1).

## IV.   ANALYSIS

### a. The Court correctly determined that Chan is a serious risk of flight and that no conditions can ensure his appearance or the safety of the community.

The Bail Reform Act creates a straightforward and common-sense framework for evaluating whether pretrial detention is appropriate. As applied in this case, as a threshold matter, the Court must ask whether there is "a serious risk that [Chan] will *flee*." 18 U.S.C. § 3142(f)(2)(A) (emphasis added). If the Court determines that there is a serious risk that Chan will flee, then the Court must hold a "hearing to determine whether any condition or combination of conditions . . . will *reasonably assure the appearance* of such person as required and the safety of any other person and the community." 18 U.S.C. § 3142(f) (emphasis added). Section 3142(g) then provides an extensive list of factors—some favoring detention, some not—for the Court to consider in making that determination. Thus, in this two-step analysis, the word "flee" refers to the Government's initial burden of production, and "reasonably assure the appearance" refers to the Court's ultimate balancing of all factors—to

5

include the potential for stringent bond conditions and evidence offered by the Defendant during the hearing that can mitigate the risk of flight and danger to the community.

At the detention hearing, the Magistrate Judge correctly determined that the United States's proffered evidence concerning Chan's mental health, his lack of ties to the community, his lack of employment, his foreign connections, and his status as a Canadian national meant that he posed a serious risk of flight under Section 3142(f)(2)(A). Doc. 32 at 1. The Magistrate Judge also correctly determined under Section 3142(g) that Chan's proposed bond conditions were not sufficient to outweigh that risk and reasonably assure his appearance at trial or to protect the community, including the G.D., from Chan. *Id.* at 1-2.

### b. Chan Poses a Serious Risk of Flight Warranting a Detention Hearing

Chan poses a serious risk of flight, and thus, a detention hearing is proper. When analyzing potential to flee, Courts routinely consider the following: nature and circumstances of the offense, the lack of a permanent address, the length of prison sentence and likelihood of being convicted, the defendant's family ties and employment status, and the history of the defendant. *United States v. Ellis*, 646 F. App'x 889, 890 (11th Cir. 2016) (explaining the factors to consider when determining if the defendant is a risk of flight); *United States v. Harris*, 453 F. Supp. 3d 690, 695 (M.D. Pa. 2020) (explaining that, among other reasons, the numerous aliases used in the past weighed in favor of detention).

6

Chan is indicted for a serous offense: interstate stalking. And a conviction for interstate stalking will result in prison time. What's more, Chan, who is a Canadian national has no permanent residence in the United States. He also has no way to year legitimate income in the United States. Second Tr. at 10:13-22. Additionally, when his visa expires in December, he will have no legal status in the United States. *Id*. Taken together, these factors demonstrate that Chan is a serious risk of flight, and a detention hearing is warranted.

### c. The Statutory Factors Set Forth in Section 3142(g) Demonstrate That No Reasonable Conditions of Release Exist to Assure Chan's Appearance and the Safety of the Community

Because Chan poses a serious risk of flight, the Court is compelled under Section 3142(g) to hold a hearing to determine whether "there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community." The factors set forth in Section 3142(g) demonstrate that there are no conditions of release that will assure Chan's appearance or the safety of the community.

#### 1. *Nature and Circumstances of the Offenses*

The nature and circumstances of the offense charged weighs in favor of detention. 18 U.S.C. § 3142(g)(1). First, he possesses a foreign passport and can cross international borders. *Id*. at 9:5-13. Chan obtained a Canadian passport and booked an international flight for the sole purpose of finding G.D. and engaging in criminal activity. And he succeeded: he found her address, he found a way to travel from Orlando to G.D.'s home, and he visited a WWE performance center in the hopes

7

that G.D. would be there. Doc. 1 at 2-4. When visiting her home (unannounced and without permission), Chan tried to locate a spare key under the front door mat. He even held a pellet riffle while he attempted to break into G.D.'s home through the front door. *Id*; Second Tr. at 9:13-25. Chan then evaded law enforcement for several days—which resulted in G.D. needing a police escort back to her home because Chan's whereabouts were unknown. *Id*.

> 2. *Weight of the Evidence and Incentive to Flee Support the Finding that Chan is a Serious Risk of Flight*

The weight of the evidence, too, favors detention. 18 U.S.C. § 3142(g)(2). If convicted, Chan is facing a Sentencing Guidelines range of 10- 16 months. And the weight of the evidence against Chan is strong. At trial, the United States is required to prove beyond a reasonable doubt that Chan (1) traveled in interstate or foreign commerce, (2) he did so with the intent to injure or harass a victim or place under surveillance with intent to kill, injure, harass or intimidate another person, and (3) in the course of, or as a result of, such travel placed a person in reasonable fear of the death of, or serious bodily injury to, or causes substantial emotional distress to that person. *United States v. Gross*, 23 F.4th 1048, 1052 (8th Cir. 2022); *United States v. Wills*, 346 F.3d 476, 493–94 (4th Cir. 2003); *United States v. Al-Zubaidy*, 283 F.3d 804, 808 (6th Cir. 2002).

The evidence against Chan demonstrates that he had no purpose for his visit other than his desire to pay an unwelcomed and threatening visit to G.D. Indeed, on the *very day* Chan obtained a Canadian passport, he booked a flight from Canada to

8

Florida. And he did so to find G.D. When he arrived, he confirmed as much stating that he would be staying at the WWE Performance Center (where G.D. makes appearance). Second Tr. at 9:17-25. Importantly, the WWE Performance Center has no living quarters and there is no place to actually stay. *Id*. Within days of his arrival, he traveled from Orlando to G.D.'s home where video footage from G.D.'s home security camera captured Chan's disturbing conduct—including holding a pellet gun while he attempted to get into G.D.'s front door. *Id*. at 9:17-25. In the handwritten note Chan left at G.D.'s home, where he made it known that he had found where she lived, Chan provided his real name, phone number, and address. *Id*. at 10:2-8. As a result of Chan's conduct, G.D. required a police escort to her home. Id. at 10:8-12. She no longer brings fan mail into her home, and she is extremely concerned by the fact that Chan was able to find where she lived and make an unwelcomed and terrifying visit.

Upon conviction, Chan will be imprisoned for several months and will be precluded from returning to the United States. If on the other hand, Chan flees to Canada—where Chan lives, works, and has family—he could avoid prison altogether. Put simply, Chan has the instinctive to flee and the ability to do so.

### 3. *Chan's History and Characteristics Favor Detention*

The next factor also favors detention. 18 U.S.C. § 3142(g)(3). Chan has no permanent address in the United States: he is a Canadian citizen who resides in Ontario, Canada. Second Tr. at 10:13-22. He also has no friends or family in the Middle District of Florida. In fact, Chan does not have a *single* tie to the United

9

States. *Id*. And while he initially entered the United States under a valid visa, that visa does not permit him to earn wages in the United States. When the visa expires in December, Chan will also have no legal status or permission to be in the United States. At that point, Chan would unlawfully be in the United States and will be subject to deportation proceedings. Chan's lack of any connection, much less a meaningful one, to the Middle District of Florida warrants detention.

What's more, at the initial detention hearing, Chan reported having no mental health problems. Since then, however, Chan's counsel has indicated that Chan is being evaluated for competency and suffers from "delusional disorder." Doc. 23 at 1; Second Tr. at 5:6-13. Given Chan's lack of ties to the community, the nature and circumstances of the offense, and Chan's serious mental health concerns, Chan is a serious risk of flight and a detention hearing is warranted.

### 4. *Chan is a Danger to the Community*

Lastly, the nature and seriousness of the danger, particularly to G.D., if Chan were released demands detention. § 3142(g)(4). If Chan were released to the Salvation Army—a voluntary program with no real repressions for failing to abide by the rules—he could easily visit G.D.'s home again. Second Tr. at 11:15-24. After all, Chan himself admits that he has a delusional belief that G.D. is his friend and that she welcomes his company (which she does not). *Id*. at 5:6-12. He also appears to believe that waiting for G.D. on her front porch while holding a pellet gun, holding that same gun while attempting to break into her front door, and searching for a spare key to gain access to her home is simply a "friendly" encounter. *Id*. at 5:13-21.

Chan's disregard for G.D.'s safety and concerning belief that his conduct was somehow welcomed should give the Court no confidence that he would comply in good faith with any prohibitions imposed on him—particularly around G.D. There are simply no conditions of release that can assure Chan's appearance or the safety of the community.

That brings the United States to Chan's primary argument: that Magistrate Judge improperly considered Chan's dangerousness in ordering his detention. According to Chan, in cases in which the United States is obtained a detention hearing under Section 3142(f)(2)(A)—risk of flight—the Court can only consider the Defendant's risk of non-appearance, and not evidence of dangerousness. *Id*. at 10-19.

But the Defendant's argument flouts the plain meaning of the statute. As discussed above, Section 3142(f) poses a threshold question that, once answered in the affirmative, compels the Court to hold a detention hearing. And at that detention hearing, Section 3142(g) commands the Court to "take into account the available information concerning," among other things, "the nature and seriousness of the danger to any person or the community that would be posed by the person's release." Thus, the statute unequivocally commands that, in all detention hearings, the Court "shall" consider whether "there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community," and in making that assessment, "shall" consider evidence of the defendant's dangerousness. 18 U.S.C. § 3142(g).

The cases Chan cites are entirely consistent with this position. Each of those

cases held that "dangerousness" alone cannot justify a detention hearing if Section 3142(f) is not satisfied. *See United States v. Salerno*, 481 U.S. 739 (1987)(Congress did not intend to authorize preventive detention unless the judicial officer first finds that one of the § 3142(f) conditions for holding a detention hearing exists); *United States v. Byrd*, 969 F.2d 106, 109 (5th Cir. 1992) (concluding that a person's threat to the safety of any other person or the community, in the absence of one of the six specified circumstances, could not justify a detention hearing); *United States v. Himler*, 797 F.2d 156, 159 (3d Cir.1986) (concluding that no pre-trial detention hearing can be held based solely on the grounds of dangerous to another person or the community is not authorized unless the case involves one of the crimes set forth in Section 3142(f)(1)); *United States v. DeBeir*, 16 F. Supp. 2d 592, 594-95 (D.Md.1998) ("[The Act] allows dangerousness to justify detention only for those individuals who fall within the carefully delineated categories set forth in § 3142(f)(1)" and because there was no risk of flight or attempt to obstruct justice, there was no basis for detention).

  The First Circuit's decision in *United States v. Ploof*, 851 F.2d 7 (1st Cir. 1988)—which Chan himself cites—is particularly instructive. In *Ploof*, the defendant was indicted for making false statements in a mortgage loan application. *Id*. The lower court ordered a detention hearing on the grounds that the defendant was a dangerous person who "appears to have no qualms about planning criminal acts and taking steps to protect himself from being associated with the crimes afterwards." *Id*. at 8. In view of the defendant's apparent ruthlessness, the lower court could not find

12

any conditions which would reasonably assure that defendant would not be a danger to persons who had crossed him. *Id*. The First Circuit remanded—not because defendant's danger could not be considered at all, but rather to ensure "further findings made indicating whether or not there is a serious risk defendant will engage or attempt to engage in the conduct set forth in section 3142(f)(2)(B) and that no condition or combination of conditions under 3142(e) and (g) will reasonably assure the safety of any other person and the community." *Id*. at 12. In other words, *Ploof* stands for the proposition that, although "dangerousness" cannot, without more, trigger a detention hearing, the defendant's "dangerousness" is certainly a factor to be considered when deciding whether a defendant should actually be detained.

Critically, in this Circuit, it is even an open question as to whether detention would be appropriate on the basis of dangerousness alone, in the absence of any other category under Section 3142(f). *See United States v. Megahed*, 519 F. Supp. 2d 1236, 1249 (M.D. Fla. 2007)(suggesting that the Court would be inclined to reject the analysis set forth in Ploof and the like altogether because, as the Court reads the Act, detention may be authorized in any case in which "the court determines after a hearing (1) by a preponderance of the evidence that no conditions of release will reasonably assure the appearance of the arrestee (risk of flight) or (2) by clear and convincing evidence that no conditions of release reasonably will assure the safety of another person or the community (dangerousness)"). The Court need not resolve this question today because the United States has ample evidence showing that the Defendant poses a serious risk of flight under Section 3142(f)(2)(A).

13

In summary, Chan's argument that evidence of "dangerousness" cannot be considered is belied by the very cases he cites, the plain language of the statute, and the case law of this circuit. The Magistrate Judge, in applying the section 3142(g) factors, appropriate considered Chan's dangerousness and determined he should be detained pending trial.

## V.     CONCLUSION

For the foregoing reasons, the United States respectfully requests that the Court deny Chan's revocation of the Magistrate Judge's detention order. There are no conditions of release or combination of conditions would assure the appearance of Chan or the safety of others and the community. Accordingly, Chan should remain detained pending trial.

Respectfully submitted,

GREGORY W. KEHOE
United States Attorney

By:     */s/ Lindsey Schmidt*
Lindsey Schmidt
Assistant United States Attorney
United States Attorney Number 222
400 N. Tampa St., Ste. 3200
Tampa, FL 33602-4798
Telephone: (813) 274-6000
Facsimile: (813) 274-6358
E-mail: lindsey.schmidt@usdoj.gov

U.S. v. CHAN                                   Case No. 8:25-cr-311-MSS-TGW

## CERTIFICATE OF SERVICE

I hereby certify that on September 22, 2025, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to counsel for the parties of record.

> By:   */s/ Lindsey Schmidt*
> Lindsey Schmidt
> Assistant United States Attorney
> United States Attorney Number 222
> 400 N. Tampa St., Ste. 3200
> Tampa, FL 33602-4798
> Telephone: (813) 274-6000
> Facsimile: (813) 274-6358
> E-mail: lindsey.schmidt@usdoj.gov