```
1              IN THE UNITED STATES DISTRICT COURT

2                  MIDDLE DISTRICT OF FLORIDA

3                        TAMPA DIVISION

4

5  UNITED STATES OF AMERICA,     )
                                 )
6           Plaintiff,           ) Criminal Docket
                                 )
7       vs                       ) No. 8:25-cr-311-MSS-TGW-1
                                 )
8  SHAWN CHAN,                   )
                                 )
9           Defendant.           )
   _____)
10

11              Transcript of Motion Hearing
                 Heard in Courtroom 12A
12        Sam M. Gibbons United States Courthouse
                801 North Florida Avenue
13                Tampa, Florida 33602
              September 15, 2025 - Monday
14              2:45 p.m. - 2:57 p.m.

15        BEFORE THE HONORABLE THOMAS G. WILSON

16            UNITED STATES MAGISTRATE JUDGE

17

               LORI ANN CECIL VOLLMER, CSR, RPR
18             Federal Official Court Reporter
        Sam M. Gibbons United States Courthouse
19        801 North Florida Avenue, Room 1221
                Tampa, Florida 33602
20         Lori_CecilVollmer@flmd.uscourts.gov
                    (813) 301-5336
21

22

23  Proceedings transcribed via courtroom digital audio recording
     by a court reporter using computer-assisted transcription.
24

25
                   UNITED STATES DISTRICT COURT
                     MIDDLE DISTRICT OF FLORIDA
                          TAMPA DIVISION
```

```
 1                         APPEARANCES

 2
    PRESENT ON BEHALF OF THE PLAINTIFF,
 3  THE UNITED STATES OF AMERICA:

 4       MS. LINDSEY SCHMIDT,
         UNITED STATES ATTORNEY'S OFFICE
 5       400 North Tampa Street
         Suite 3200
 6       Tampa, Florida 33602-4798
         (813) 274-6000
 7       lindsey.schmidt@usdoj.gov

 8

 9
    PRESENT ON BEHALF OF THE DEFENDANT,
10  SHAWN CHAN:

11       MR. SAMUEL LANDES,
         FEDERAL PUBLIC DEFENDER'S OFFICE
12       400 North Tampa Street
         Suite 2700
13       Tampa, Florida 33602-4726
         (813) 228-2715
14       Samuel_Landes@fd.org

15

16

17

18

19

20

21

22

23

24

25
```

| | |
|---|---|
| 1 | PROCEEDINGS |
| 2 | (Open court.) |
| 3 | (Defendant present.) |
| 4 | (Court called to order.) |
| 5 | COURT SECURITY OFFICER:  Court is now in session. |
| 6 | The Honorable Thomas E. Wilson is presiding. |
| 7 | You may be seated. |
| 8 | THE COURT:  This is a proceeding in case number |
| 9 | *8:25-cr-311-MSS-TGW*, *United States versus Shawn Chan*. |
| 10 | The defendant has -- we previously had a detention |
| 11 | hearing and the defendant was ordered detained.  He has |
| 12 | asked that it be reopened because now he has a place to stay |
| 13 | whereas he didn't before. |
| 14 | You may proceed. |
| 15 | MR. LANDES:  Thank you, your Honor. |
| 16 | Sam Landes for Shawn Chan who is with me here |
| 17 | at counsel table. |
| 18 | Your Honor, as the Court correctly recounted, |
| 19 | there was previously a hearing at which the defense |
| 20 | conceded that there was simply nowhere for Mr. Chan to |
| 21 | live. |
| 22 | Since that time, we've secured housing for |
| 23 | Mr. Chan at the Salvation Army's Adult Rehabilitation |
| 24 | Center in Tampa, Florida.  So he can live there.  He's |
| 25 | under some pretty strict restrictions.  One example is |

1  that he can't use a cell phone for 30 days.  He can't
2  have a cell phone for 30 days.
3     The Court, of course, can order electronic
4  monitoring and probably should in this case and order
5  Mr. Chan to stay-away from the alleged victim.  With
6  the combination of that stay away order and electronic
7  monitoring, we will know where Mr. Chan is and he will
8  have his -- a great disincentive to stay away from the
9  victim and to not flee.
10    I think importantly, your Honor, this is not
11 a case about dangerousness.  Much of the government's
12 argument has focused on factors like that pointing to
13 especially the nature of the offense.
14    But this is a case brought to show that there
15 is a risk of flight and the government has moved under
16 (f)(2) trying to show --
17    THE COURT:  What?
18    What did you say?
19    MR. LANDES:  (f)(2), your Honor.  This is --
20 this is a case in which the government has moved by showing
21 that there's a serious risk of flight or is attempting to
22 show a serious risk of flight.
23    And for that reason, I think a lot of what the
24 government has to say is beside the point because it has --
25 goes to perhaps dangerousness, but not the likelihood that

1  he would flee.

2       So the nature of the offense, however startling
3  it may be, that he should show up at this person's house
4  does not lend itself to -- as evidence that he's going to
5  flee from the proceedings in this case.

6       Moving down the list, the -- the weight of the
7  evidence is weak.  One fact I'd like to proffer to the
8  Court is that since the last time we were together, we've
9  had Mr. Chan psychologically evaluated and he has delusional
10 disorder.  So he has a sincere misguided or bizarre belief
11 that he has a serious friendship with this person who he
12 tried to visit.

13      One of the elements that the government has to
14 prove is that Mr. Chan intended to harass or intimidate
15 the alleged victim, not that he was simply trying to visit
16 someone with whom he thought he had a friendly relationship.
17 So that undercuts the government's evidence that it would
18 have to prove because they can't prove that element.  In
19 fact, he had this sincere, although bizarre mistaken belief,
20 that he was just present --

21      THE COURT:  That makes it better?

22      MR. LANDES:  It does.  It does under the weight
23 of the evidence prong, your Honor.

24      So he --

25      THE COURT:  I don't understand.  If he's got

1  some obsession with this woman, why would I trust him to
2  stay away from her?
3           MR. LANDES:  Because there's conditions of
4  release that will ensure that, your Honor.
5           THE COURT:  No, no.  Yeah.  It's sitting in
6  jail.  I -- I'm not going to risk some woman's safety on
7  somebody who has -- apparently, you had him evaluated,
8  is that it?
9           MR. LANDES:  Yes, your Honor.  Yes, your Honor.
10          THE COURT:  And so he has an obsession with her.
11          MR. LANDES:  Well, I wouldn't say that, your
12 Honor.  He has a delusion.
13          THE COURT:  I thought that's what you said.
14          MR. LANDES:  He has a delusion that he has a
15 friendly relationship with her.  I wouldn't say he has an
16 obsession with her.
17          THE COURT:  Okay.
18          MR. LANDES:  So he thinks he's visiting a friend
19 when he shows up at the front door, leaves a note with his
20 name and his address and how we can find him.  That's not
21 consistent with having an intent to harass or intent to
22 intimidate.
23          And so that -- because of that, the strength of
24 the evidence is weak.  He has a strong incentive to go to
25 trial, to come back to court, not flee, and go to trial and

1  seek his acquittal because the government's evidence is
2  weak.
3         Your Honor, I -- I again want to reemphasize
4  that this motion for detention was brought under (f)(2).
5  So that's a serious risk of flight.  So while it was --
6         THE COURT:  I gave you a break by getting --
7  agreeing to do it.  The government is correct.  There wasn't
8  anything new that was really presented and you're really
9  not entitled to this reopening.
10        The fact that he can now stay at the Salvation
11 Army doesn't persuade me at all that there's anything
12 really substantially new, but I had the hearing and I
13 scheduled it as an accommodation.
14        MR. LANDES:  Understood, your Honor.
15        And -- and what we would say to that is that
16 that's some very important new information because at the
17 prior hearing, he had absolutely nowhere to live.  Now, he
18 has somewhere he can go.  So that's -- that's a material
19 change and it's an important change.
20        We didn't even ask for his release before that
21 because we just had nowhere for him to be.  We -- we do
22 now because he has somewhere he can be and there are
23 conditions of release that will ensure that he does not
24 flee and that he'll appear as required.
25        So I don't think it's -- it's about safety, your

 1  Honor.  It's not about dangerousness or safety.  I think
 2  it's all --
 3           THE COURT:  No, it is.  In my mind, that's what
 4  it's about.
 5           MR. LANDES:  Under- -- understood, your Honor.
 6           And -- and we object to that, to the Court
 7  considering it in that way.
 8           THE COURT:  Okay.  All right.
 9           MR. LANDES:  Thank you, your Honor.
10           THE COURT:  What says the government?
11           MS. SCHMIDT:  Your Honor, it's the United States'
12  position that Mr. Chan should remain detained.
13           One important point is moving under 3142(f)(2)
14  does not preclude the Court from considering dangerousness.
15  It just triggers the hearing, which we had, and now we've
16  reopened against the government's objection.
17           So dangerousness is an appropriate factor under
18  3142(g), starting there.
19           And before I proceed with argument, I just offer
20  Government's Exhibit 1 into evidence, which the Court has
21  in front of -- the Court has as well as defense counsel.
22           THE COURT:  Well, that -- that was already -- I've
23  already seen that picture.
24           MS. SCHMIDT:  Understood, your Honor.
25           I know it's in the complaint.  I just wanted to

1  reiterate that again here today.
2          THE COURT:  It wasn't in color, but it was --
3          MS. SCHMIDT:  Understood, your Honor.
4          THE COURT:  Go ahead.
5          MS. SCHMIDT:  Turning to the nature and
6  circumstances of the offense, I won't be labor this point.
7  This is a serious offense.
8          Mr. Chan traveled from Canada to Florida for
9  the sole purpose of finding this person, the victim in
10 this case.  He did so.  He traveled to her home.  Once he
11 got to her home, he snuck around the property.  He snuck
12 onto the property.  He jiggled door handles.
13         Government's Exhibit No. 1 is not a -- not a
14 friendly visit.  He's holding pellet gun while he tries
15 to gain access into the victim's front door.  He stayed
16 for hours.
17         He left a note that I would argue is intimidating
18 making sure that the victim knew that he was there, knew
19 that he -- he knew where to find her and knew where she
20 would be.
21         He then traveled to her place of work, a performance
22 center in Orlando, which was the very place that when he came
23 into the United States, he said he was staying.  When he was
24 at the center, he knew that there was a potential for the
25 victim to be there and did he so for the sole purpose of

1  intimidating the victim.

2  And contrary to defense counsel's argument, 3 the weight of the evidence is very strong here.  First of 4 all, he's recorded on video camera.  He signs a note with 5 his name on it and his address and his phone number.  And 6 the prong is would this cause a reasonable person to be 7 distressed?  And the answer to that is yes, it would.

8  Having someone show up to your home, finding 9 your address, walking around with a pellet gun is certainly 10 concerning and it was to this victim.  It was so concerning 11 that when Mr. Chan's whereabouts were unknown, she had to 12 be escorted home by police.

13  And, your Honor, Mr. Chan's history and 14 characteristics also weigh in favor of detention.  As your 15 Honor knows, he's a Canadian citizen with no status here 16 in the United States.  He entered on a B1 Visa that will 17 expire in November at which point he would be subject to 18 deportation proceedings.

19  He also, under that Visa, even while it is 20 operable, cannot work in the United States and gain and 21 earn wages.

22  And he also has no ties whatsoever to the Middle 23 District of Florida.  He has no family, no friends , no 24 support system here.  And those all weigh in favor of 25 detention.

1         And then when defense counsel brought up as
2  the delusional disorder, that certainly weighs in favor
3  of detention.  One, for purposes of dangerousness, but
4  also for risk of flight under 3142(g).
5         A person's mental health can certainly be
6  considered.  It appears he has a delusional disorder that
7  makes him think that he has some relationship with the
8  victim that he does not.
9         Your Honor, securing a bed at the Salvation Army
10 does not warrant even opening this detention hearing.  It
11 certainly doesn't alleviate the factors that Mr. Chan --
12        THE COURT:  Well, we're already here at the
13 hearing.
14        MS. SCHMIDT:  Sure.  Understood, your Honor.
15        It certainly doesn't alleviate the fact that
16 he is not only a risk of flight, but also that he is a
17 danger to the community, specifically to the victim in
18 this case who, as your Honor knows, lives in and around
19 the Tampa area.
20        It's my understanding that the Salvation Army
21 is a voluntary program.  He can come and go as he pleases
22 with no repercussions for going, visiting the victim and
23 not coming back.
24        Also, as the United States pointed out, he has
25 no ability to earn wages here in the United States while

1  he's on release.  I think that would complicate a few
2  things for purposes of reporting to pretrial services,
3  traveling to and from potential visits as well as even
4  obtaining a cell phone for check-ins.
5         And so for all of those reasons, as well as
6  those stated at the original detention hearing, your
7  Honor, the United States believes that Mr. Chan should
8  remain detained pending trial.
9         THE COURT:  Mr. Landes?
10        MR. LANDES:  Yes, your Honor.
11        Your Honor, I do think it would be an error
12 to base this decision on dangerousness.  There -- the --
13        THE COURT:  Well, I'm going to.
14        MR. LANDES:  Understood.
15        THE COURT:  Because I'm doing it from the -- the
16 perspective of the victim.  She's got to be terrified and
17 to have him free and loose out there has got to be really
18 scary for her.  So I'm considering that factor.
19        MR. LANDES:  Understood, your Honor.
20        THE COURT:  And the -- and you've added that he
21 has some delusion about her.  That wasn't on the table
22 before.  But under the circumstances, he will be detained.
23        All right.  Anything further I need to address?
24        MS. SCHMIDT:  Nothing the United States, your
25 Honor.

1      MR. LANDES:  No.  Thank you, your Honor.
2      THE COURT:  All right.  Court will be -- court
3  will be in recess.
4      COURT SECURITY OFFICER:  All rise.
5          (Whereupon, the Court adjourned
6           at 2:57.)
7                --ooOoo--

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

```
1  UNITED STATES DISTRICT COURT  )
2                                )
3  MIDDLE DISTRICT OF FLORIDA    )
4
5              REPORTER TRANSCRIPT CERTIFICATE
6
7         I, LORI ANN CECIL VOLLMER, Official Court Reporter
8  for the United States District Court, Middle District of
9  Florida, certify pursuant to Section 753, Title 28, United
10 States Code, that the foregoing transcript is a true and
11 correct transcription of the stenographic notes taken by the
12 undersigned in the above-entitled matter, Pages 1 through 13,
13 and that the transcript page format is in conformance with
14 the regulations of the Judicial Conference of the United States
15 of America.  I further certify that I am not attorney for, nor
16 employed by, nor related to any of the parties or attorneys to
17 this action, nor financially interested in this action.
18         IN WITNESS WHEREOF, I have set my hand at Tampa,
19 Florida, this 19th day of September 2025.
20
21         /s/ Lori Ann Cecil Vollmer
22         Lori Ann Cecil Vollmer, CSR, RPR
           United States Court Reporter
23
24
25
```